# EXHIBIT B

**General Announcement to Eligible Employees**
**El Al Israel Airlines**
**2006 Voluntary Severance Program**

---

### 1. What is the 2006 Voluntary Severance Program?

El Al Israel Airlines (the "Company") has adopted the El Al 2006 Voluntary Severance Program (the "Program"). The Program provides enhanced benefits to eligible employees of the company who voluntarily resign under the program and whose resignation is accepted by the company.

The enhanced benefits that are provided to eligible employees who resign under the program include:

- A severance benefit from the company: and
- Eligibility for up to six (6) months of health care coverage, if elected under COBRA, under the El Al Medical Plan following resignation.
- Retiree flight benefits for employees with at least 20 years of Company service.

### 2. How long is the program being offered?

The program is being offered for a limited period of time beginning October 27, 2006 and ending November 27, 2006. In order to participate, you must:

- During this period, elect to resign on the enclosed election form, and
- Be accepted for the Program by the Company by December 1, 2006 or such earlier or later date designated by the company; and
- Sign a Separation Agreement and General Release on the date you actually resign under the Program (your "Resignation Date").

### 3. When is my last date of scheduled employment?

Your last day of scheduled employment will be December 15, 2006, or an earlier or later date, as designated by the Company.

### 4. Who is eligible to participate in the program?

You are eligible to participate in this program if, as of October 27, 2006, you are an active full-time or part-time employee in good standing of the Company in the United States.

### 5. Who is not eligible to participate in the program?

You are not eligible to participate in this program even if you meet the requirements in Question 4 above, if you fall into any of the following categories as of October 27, 2006:

- You have a written employment or separation agreement with the Company;

1

- You are classified by the Company as an independent contractor;
- You are paid for services rendered to the Company directly by an outside entity;
- You are paid for services rendered to the Company directly by the Company through any means other than its internal payroll system.
- You are a "postee" from Head Office working on temporary assignment in the United States.

**6. How do I request to participate in and receive benefits under the program?**

To request to participate in and receive benefits under the Program, you must offer to voluntarily resign from your employment with the Company by signing and returning to the Company the El Al 2006 Voluntary Severance Program Election Form, attached hereto as Exhibit "1". The Voluntary Severance Program Election Form must be signed and returned to Yossi Benbassat, Manager-Human Resources and Administration, by no later than November 27, 2006.

**7.  What other documents describe the terms and conditions of the Program?**

This announcement is a general summary and description of the Program. However, if there is ever any discrepancy between this announcement and the official Program documents, the official Program documents will control. El Al reserves the right to modify, amend, suspend or terminate the Program in whole or in part, at any time and from time to time, for any reason, by action of the Company.

**8.  What happens after I submit a signed El Al 2006 Voluntary Severance Program Election Form ?**

After you submit your signed Voluntary Severance Program Election Form, the Company will determine (in its sole discretion) whether or not to accept your offer to resign under the Program. If the Company decides to accept your resignation, it will decide whether your individual Resignation Date will be December 15, 2006 or earlier or later. The Company intends to make these determinations no later than December 1, 2006.

If your offer to resign is accepted by the Company, you are eligible to resign and receive benefits under the Program.

If your offer to resign is not accepted by the Company, you will not be eligible to receive benefits under the program. You will remain with the Company in your current or a restructured position.

**9.  What severance benefit is provided under the Program?**

If your offer to voluntarily resign is accepted and you resign in accordance with the terms and conditions of the Program:

- You will be entitled to a severance benefit equal to 2 weeks of your regular base pay (as in effect as of December 15, 2006) multiplied by your

2

years of service with the Company, less any years for which you have previously been paid severance.

- The severance benefit will be paid to you, less lawful deductions within one month after your last day of employment. Deductions will be made according to applicable law and the rules and regulations of the El Al 401(k) Plan, which indicate no contributions can be made from a severance payment.
- These benefits are intended to replace any other severance or income replacement benefits to which you may be entitled. Therefore, if you elect to retire under the Program, you will not be entitled to receive any severance or income replacement benefits other than those provided under the Program.

### 10. How do I resign and receive benefits under the Program?

To receive the benefits provided under this program, you must satisfy <u>all</u> of the following conditions:

- You must offer to voluntarily resign from your employment with the Company by signing and returning to Yossi Benbassat the El Al 2006 Voluntary Severance Program Election Form no later than November 27, 2006, and
- The Company must accept your offer to voluntarily resign; and
- On your Resignation Date, you must sign a Separation Agreement and General Release (the "Agreement") attached hereto as Exhibit 2", and any other forms the Company may request, and return them to Yossi Benbassat, and
- You must continue to be employed by the Company until your Resignation Date, and
- You must actually resign from employment on your Resignation Date.

### 11. How do I learn more about the Program?

You will have the opportunity to schedule a meeting with Yossi Benbassat (or other designated Company official) to discuss the details of the Program and how the Program affects your resignation decision.

### 12. Is this Program mandatory ?

Absolutely not. This Program is entirely voluntary.

### 13. What happens if I do not resign under the Program?

No one is required to resign under the Program. However, the Company is currently evaluating a restructuring which may result in the elimination of certain positions. The restructuring will also likely involve an increase in or a modification of the duties in those positions which will remain. Therefore, if you do not elect to resign under the Program, your position may still be eliminated. Also, if you do not elect to resign, you

may be assigned a different position or your duties in your existing position may change or increase. Also, if you do not resign under the Program, please note that benefits provided to employees in connection with any possible future reductions in the workforce (whether voluntary or involuntary) may or may not be the same as the benefits provided under this Program.

### 14.    Does this package offer any medical and dental coverage?

Yes. For people who volunteer for and are accepted into the Program, and who elect COBRA medical (including dental), the Company will pay for the first six months of coverage under  the El Al Medical Plan, provided that employees must continue to contribute on the same terms as in effect immediately prior to their Resignation Date. An additional 12 months of COBRA coverage may be purchased by the recipient thereafter. COBRA forms will be provided by the Human Resources Department.

### 15. Does this package offer any enhanced flight benefits?

No. However, employees with 20 or more years of Company service will be entitled to regular retiree flight benefits.

### 16. Does this Program offer any pension enhancements?

No. However, employees age 55 and older will be entitled to withdraw the funds in their variable annuity accounts in accordance with regular plan rules.

### 17. Am I eligible for accrued vacation pay?

You will be paid for any accrued but unused vacation time following your Resignation Date. You will not accrue any additional vacation time after your Resignation Date.

### 18. What if I have questions?

Arrange to speak with Yossi Benbassat who will be pleased to speak with you.

### END OF GENERAL ANNOUCEMENT

## EXHIBIT 1

El Al Israel Airlines
2006 Voluntary Severance Program

Election Form

I hereby elect to voluntarily resign from my employment with El Al Israel Airlines in accordance with the terms of the El Al 2006 Voluntary Separation Program (the "Program").

If accepted for the Program, my resignation date shall be December 15, 2006 (or such date earlier or later as designated by El Al). I understand that the Company has the absolute discretion to accept or reject my application for the Program and I will be required to sign a Separation Agreement and General Release on my last day of employment in order to receive any benefits under the program.

_____
Employee's Signature


_____
Employee's Name

_____
Date

**EXHIBIT 2**

## EL AL 2006 VOLUNTARY SEVERANCE PROGRAM
## SEPARATION AGREEMENT AND GENERAL RELEASE

El Al Israel Airlines ("Employer") and the employee who has signed his or her name at the end of this document ("Employee"), agree that:

1.    **Election to Participate**.   Upon his or her complete execution and delivery of an Election Form to Employer by November 27, 2006 or such other date established by Employer in its sole discretion, Employee elects to participate in the El Al Israel Airlines 2006 Voluntary Severance Program (the "Program").   Employee's ability to participate in this Program is conditioned upon Employer's acceptance of Employee's offer to participate in the Program, and Employee's satisfaction of all eligibility requirements for the Program, including Employee's complete execution and timely delivery of this Separation Agreement and General Release ("Agreement").

2.    **Last Day of Employment**.   Employee will voluntarily resign from Employer as of December 15, 2006 or such other date established by Employer in its sole discretion ("Resignation Date").

3.    **Eligibility and Consideration**.   The eligibility requirements for the Program are set forth in the El Al Israel Airlines 2006 Voluntary Severance Plan And Summary Plan Description ("Program Plan Document").   Individuals who are eligible for and elect to participate in the Program will be provided with enhanced severance and medical benefits as described in, and subject to the terms of, the Program Plan Document. Employee confirms he or she is eligible to participate in the Program and to receive the consideration specified in the Program Plan Document by entering into this Agreement. Employee understands and agrees that he or she would not receive the monies and/or benefits specified in the Program Plan Document except for his or her execution of this Agreement and fulfillment of the promises contained in this document that pertains to Employee.

4.    **Revocation**.   Employee may revoke this Agreement for a period of 7 days following the day he or she executes this Agreement.   Any revocation within this time period must be submitted, in writing, to El Al's Manager Human Resources and Administration, Yossi Benbassat, and must state, "I hereby revoke my acceptance of my Separation Agreement and General Release." The revocation must be personally delivered during this period to Yossi Benbassat at El Al, 15 East 26th Street, New York, New York  10010, or mailed to Mr. Benbassat at the above address and postmarked within 7 days of Employee's execution of this Agreement.   This Agreement shall not become effective or enforceable until the revocation period has expired.  If the last day of the revocation period is a Saturday, Sunday or legal holiday recognized by the State of New York, then the revocation period shall not expire until the next following day which is not a Saturday, Sunday or legal holiday.

5.    **General Release of All Claims**.   Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates,

subsidiaries, divisions, predecessors, successors and assigns, and the current and former employees, officers, directors and agents thereof, and Employer's employee benefit plans, including but not limited to the El Al Pension Plan, the El Al Variable Annuity Plan, the El Al 401(k) Plan, the El Al Medical Plan, any successor plans thereto, and their plan sponsors, plan administrators, benefit officers, administrative committees, investment committees, administrative committee members, investment committee members and fiduciaries (all of the above collectively referred to throughout this Agreement as the "Releasees"), of and from any and all claims, known and unknown, which Employee, his or her heirs, executors, administrators, successors and/or assigns, have or may have against Releasees up to and including the date of the complete execution of this Agreement, including, but not limited to, any alleged violation of: the Railway Labor Act; Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act of 1974; the Immigration Reform and Control Act; the Americans with Disabilities Act of 1990; the Age Discrimination in Employment Act of 1967; the Occupational Safety and Health Act; the Rehabilitation Act of 1973; the Fair Credit Reporting Act; the New York Human Rights Law; the New York City Charter and Administrative Code; the Florida Whistle Blower Law; the Florida Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers Compensation Claim; the Florida Wage Discrimination Law; the Florida Equal Pay Law; the Florida AIDS Act; the Florida Discrimination on the Basis of Sickle Cell Trait Law; Florida OSHA; the Florida Wage Payment Laws; the New Jersey Law Against Discrimination; the New Jersey Family Leave Act; the New Jersey Equal Pay Act; the New Jersey Genetic Privacy Act; the New Jersey wage and wage-hour laws; the California Family Rights Act; the California Pregnancy Disability Leave Act; the California Fair Employment and Housing Act; the California Unruh Civil Rights Act; the California Sexual Orientation Bias Law; the California AIDS Testing and Confidentiality Law; the California Confidentiality of Medical Information Law; the California Smokers' Rights Law; the California Parental Leave Law; the California Apprenticeship Program Bias Law; the California Wage Payment Act; the California Equal Pay Law; the California Whistleblower Protection Law; the California Military Personnel Bias Law; the California Family and Medical Leave; the California Parental Leave for School Visits Law; the California Electronic Monitoring of Employees Law; the California Occupational Safety and Health Act; the California Labor Code; the California Consumer Reports:  Discrimination Law; the California Political Activities of Employees Act; the California Domestic Violence Victim Employment Leave Act; the California Voting Leave Law; the California Court Leave Law; the Maryland Human Relations Commission Act; the Maryland Equal Pay Law; the Maryland Parental Leave Law; the Maryland Medical Information Bias Law; the Maryland Wage Payment and Work Hours Law; the Massachusetts Law Against Discrimination; the Massachusetts Equal Rights Act; the Massachusetts Civil Rights Act; the Massachusetts Privacy Statute; the Massachusetts Sexual Harassment Statute; the Massachusetts Consumer Protection Act; the Massachusetts wage and wage and wage-hour laws; the Illinois Human Rights Act; the Illinois Equal Pay Law; the Illinois Genetic Information Privacy Act; the Illinois Religious Freedom Restoration Act; the Illinois wage and wage-hour laws; Michigan Civil Rights Act; Michigan Persons with Disabilities Civil Rights Act; Michigan Whistleblower Protection Act; Michigan Statutory Provision Regarding Retaliation/Discrimination for Filing a Worker's Compensation Claim; Michigan AIDS Testing and Confidentiality Act; Michigan Equal

Pay Law; Michigan State Wage Payment and Work Hour Laws; Michigan Occupational Safety and Health Act; Michigan Handicapped Discrimination Law; Pennsylvania Human Relations Act; Pennsylvania Minimum Wage Act; Pennsylvania Whistleblower Law; Pennsylvania Equal Pay Law; Pennsylvania Wage Payment and Collection Law; any other federal, state, local or other civil rights or human rights, pension, employee benefits, employment or labor law, or any other local, state, federal or other law, rule, regulation, constitution, code, guideline or ordinance; any public policy, contract, tort law or common law; or any statute, common law, agreement or other basis for seeking or recovering any award of costs, fees or other expenses, including attorneys' fees and costs; or any collective bargaining agreement. Nothing in this paragraph is intended to prohibit Employee from enforcing his or her rights under the Program or from enforcing his or her vested rights under the El Al Pension, Variable Annuity and 401(k) Plans.

It is understood and agreed that this is a full and general release covering all unknown, undisclosed and unanticipated losses, wrongs, injuries, debts, claims or damages to Employee which may have arisen, or may arise from any act or omission prior to the date of the complete execution of this Agreement, including, without limitation, any claim arising out of or related, directly or indirectly, to Employee's employment, compensation or termination of employment, as well as those losses, wrongs, injuries, debts, claims or damages now known or disclosed which have arisen, or which may arise as a result of any act or omission as described above. Therefore, Employee hereby waives any and all rights or benefits which he or she may now have, or in the future may have, under the terms of Section 1542 of the California Civil Code, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

6.    **Affirmations.**

a.    Employee affirms that he or she has not filed, caused to be filed, or presently is a party to any claim against Releasees in any forum.

b.    Employee also affirms that aside from the consideration specified in paragraph 3 of this Agreement, he or she: (i) has been paid and/or has received all leaves (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he or she may be entitled; (ii) has been paid for all alleged attorneys' fees and other relief to which he or she may be entitled; (iii) understands that the consideration set forth in paragraph 3 of this Agreement shall not be considered wages for purposes of pension or any other employment related benefits; and, (iv) is not entitled to any monies, relief or recovery whatsoever, except as set forth in paragraph 3 of this Agreement.

c.    Employee affirms that Employee has returned all Employer property, documents and/or any confidential information and further promises, if all such property, documents and/or confidential information have not been returned, to deliver contemporaneous herewith to the Employer all property belonging to the Employer then

8

in the Employee's possession or control. Employee also represents that he or she is in possession of all of the personal property which he or she had at the Employer's premises and that the Employer is not in possession of any of his or her personal property.

7.    **Applicable Data**. Employee acknowledges that he or she has been provided the job titles and ages of all employees eligible and ineligible for the El Al 2006 Voluntary Severance Program in the form attached hereto as Exhibit "A."

8.    **Confidentiality**. Employee agrees not to disclose any information regarding the existence or substance of this Agreement and/or the exhibits attached to this Agreement, except to an attorney, tax preparer or immediate family member with whom Employee chooses to consult regarding his or her consideration of this Agreement.

9.    **Governing Law and Jury Waiver**. This Agreement shall be governed and conformed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions. Employee expressly consents that any action or proceeding relating to the Program will only be brought in a court located in the State of New York and that any such action or proceeding will be heard without a jury or advisory jury. Employee expressly waives the right to bring any such action or proceeding in any other jurisdiction, or to have any such action or proceeding heard before a jury or an advisory jury. If Employee violates this Agreement, Employee consents to the entry of injunctive relief against him or her without the necessity of Employer posting a bond. Employee further acknowledges Employer's right to pursue any and all of its other remedies under the law which may be necessary to remedy any violation of this Agreement.

10.    **Severability**. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. However, if any portion of the general release language set forth in Paragraph "5" above is declared illegal or unenforceable by any court of competent jurisdiction, Employee agrees that he or she cannot obtain any personal recovery against Releasees.

11.    **Nonadmission of Wrongdoing**. Employee agrees that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of any liability or unlawful conduct of any kind.

12.    **Amendment**. This Agreement may not be modified, altered or changed except upon express written consent of both Employee and Employer, wherein specific reference is made to this Agreement.

13.    **Entire Agreement**. This Agreement sets forth the entire agreement between Employee and Employer, and fully supersedes any prior agreements or understandings between Employee and Releasees pertaining to the subjects addressed in this document. Except as may otherwise be agreed in writing, Employee acknowledges that he or she has not relied on any representations, promises or

9

agreements of any kind made to him or her in connection with his or her decision to accept this Agreement and election to participate in the Program, except for those set forth in this Agreement, the official plan documents for the Program, the El Al Medical Plan, the El Al Pension Plan, the El Al Variable Annuity Plan, the El Al 401(k) Plan, any successor plans thereto, and any summary plan description or summary of material modifications for the Program or the said Plans.

EMPLOYEE HAS BEEN ADVISED THAT HE OR SHE HAS AT LEAST 45 CALENDAR DAYS TO CONSIDER THIS SEPARATION AGREEMENT AND GENERAL RELEASE, AND HAS BEEN ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTING THIS SEPARATION AGREEMENT AND GENERAL RELEASE. EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS SEPARATION AGREEMENT AND GENERAL RELEASE, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL 45 DAY CONSIDERATION PERIOD.

HAVING ELECTED TO EXECUTE THIS SEPARATION AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES SET FORTH IN THIS DOCUMENT THAT PERTAIN TO EMPLOYEE, AND TO RECEIVE THEREBY THE SUMS AND BENEFITS SET FORTH IN THE EL AL 2006 VOLUNTARY SEVERANCE PLAN, EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS SEPARATION AGREEMENT AND GENERAL RELEASE, INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE OR SHE HAS OR MIGHT HAVE AGAINST RELEASEES.

IN WITNESS WHEREOF, Employee knowingly and voluntarily executed this Separation Agreement and General Release and elected to participate in the El Al 2006 Voluntary Severance Program as of the date Employee signed the Agreement below.

_____
El Al Israel Airlines

_____
Print Name of Employee

_____
Date

_____
Signature of Employee

_____
Date Signed by Employee

_____

_____
Home Address of Employee

_____
Employee's Social Security Number

**EL AL VOLUNTARY SEVERANCE PROGRAM**
**SEPARATION AGREEMENT AND GENERAL RELEASE**

**EXHIBIT A**

## PERSONS ELIGIBLE FOR THE PROGRAM

| Job Title | Age as 10/25/06 | Job Title | Age as 10/25/06 |
|---|---|---|---|
| Secretary & Executive Secretary | 58, 56, 37, 47, 50, 61, 57, 53, 66 | Groups & Space Cnt Sup & Agent | 52, 47, 33, 33, 39 |
| Sec/Training & Service Quality Co | 44 | Adv & PR Mgr | 48 |
| HR & Admin. Mgr. | 53 | PR Lead Agent | 24 |
| Administrative Manager | 62 | Pax Club Superv, Lead & Clerk | 40, 36, 49, 38, 60 |
| Purchasing | 26 | Gen Mgr For Cargo N & C | 65 |
| Adm Service Clerk | 66 | Cargo Sales Mgr | 59 |
| Insurance & Claim Coor | 63 | Cargo Sales Rep | 57 |
| Sr Sls Dev Coor & Sales Dev Coor | 43, 61, 57 | Cargo Superv | 56 |
| Business Manager | 47 | Airport Cargo Mgr | 54 |
| Customer Rel Coor, Clerk & Pres Cust Clerk | 40, 44, 36 | Res Sales Rep NJ, PA, SF & Baltimore | 52, 56, 51, 52 |
| Asst Controller | 41 | Traffic Suprv & Coordinator | 36, 49, 50, 38, 48, 45, 30, 61 |
| Rev Acc Suprv & Coor | 54, 56 | Cargo Station Suprv & Dis / Traffic Suprv | 62, 52 |
| Expenses Acc Superv & Coor | 43, 58 | Lost & Found Supervisor | 66 |
| Accountant | 45, 42, 50, 51, 37, 41, 33, 55, 24 | Op / Crew Cnr Coor | 44 |
| Cargo Accountant & Suprv | 59, 29 | Asst Tech Rep. | 43 |
| Res & Ticket Mgr | 52 | Mechanic, Lead Mechanic | 43, 59, 26, 52, 37, 42, 66, 47, 51, 43, 51 |
| Deputy To Res & Tkt Mg | 57 | Maintenance Supervisor | 67 |
| Res Suprv | 47, 62, 45, 40 | Ship / Rec Stores Suprv. | 47 |
| Lead or Sr. Agent, Res, Ticket & Tariff | 59, 58, 53, 45, 48, 47, 37, 47, 63, 60, 52 | Station Mgr | 37, 55, 54, 59 |
| Technical Rep | 62 | Traffic Officer, Agent & Lead | 39, 31, 27, 32 |

| Ops / Cargo Coor | 49 |
|---|---|
| Reservation Agent, Ticketing & Tariff Agent | 53, 40, 41, 48, 59, 39, 38, 50, 42, 30, 35, 48, 51, 60, 38, 42, 30, 35, 42, 43, 31, 50, 37, 34, 40, 28, 39, 46, 30, 53, 48, 25, 58, 31, 24, 24, 23, 25, 28, 26, 29, 25, 36, 42 |

| Reg Mgr | 54, 53, 62, 64 |
|---|---|
| Sales Suprv, Sr. Sales Rep. & Sales Rep. | 51, 60, 39, 60, 50, 58, 59, 53, 65, 56, 61 |
| Dist Cargo Rep West Co, Mid West | 54, 48 |

## PERSONS NOT ELIGIBLE FOR THE PROGRAM

| Job Title | Age as 10/25/06 |
|---|---|
| Postee Managers | 60, 37, 55, 58, 64, 64, 44, 60 |

# EXHIBIT C

## EXHIBIT 1

EL Al Israel Airlines
2006 Voluntary Severance Program

Election Form

I hereby elect to voluntarily resign from my employment with EL Al Israel Airlines in accordance with the terms of the EL AL 2006 Voluntary Separation Program (the "Program").

If accepted for the Program, my resignation date shall be December 15, 2006 (or such date earlier or later as designated by EL Al). I understand that the Company has the absolute discretion to accept or reject my application for the Program and I will be required to sign a Separation Agreement and General Release on my last day of employment in order to receive any benefits under the program

_Aryale M.M Malaney_
Employee's Signature

_Aryale MM Malaney_
Employee's Name

_NOV 27, 2006_
Date

I would like to leave as late as possible. However, please keep in mind if the position of the company changes I would like to continue to work for ELAL. I consider myself a valued and a loyal employee so I hope all this will be taken into consideration.

_aryale Malaney_

# EXHIBIT D



**EL AL**

TO:    Anjali Malaney

FROM:    Yossi Benbassat

RE:    TERMINATION OF EMPLOYMENT PURSUANT TO 2006 EL AL ISRAEL
AIRLINES 2006 VOLUNTARY SEVERANCE PROGRAM

DATE:    December 1, 2006

You have elected to participate in the above Program. This will confirm that your last day of employment is February 28, 2007.

Provided that the release previously forwarded to you is signed by December 15, 2006 (or your last day of employment, whichever is later) and not thereafter revoked, you will be paid severance in the amount of $21.408.06, less lawful deductions, together with such other benefits as provided for in the Program. In addition, in the event that an agreement with the IAM which provides compensation and/or benefits more favorable to you is negotiated and ratified by all parties by no later than February 28, 2007, you will be entitled to receive the compensation and/or benefits of that agreement, less the compensation and benefits which you are receiving under the above Program.

Please sign below to confirm your understanding of these terms.

AGREED:

_Anjali MM Malaney_
SIGNATURE

_Dec 8, 2006_
DATE

1:\Clients\E\20115_RHB\20115\2006 Voluntary Separation Plan\Memo to EEs re Termination of Employment-Union DOC

# EXHIBIT E



**EL ʻAL ʻALʻ AL**

| | |
|---|---|
| TO: | Anjali Malaney |
| FROM: | Yossi Benbassat |
| RE: | COMPENSATION UPON TERMINATION OF EMPLOYMENT |
| DATE: | February 28, 2007 |

By memo dated December 1, 2006, you were advised that, having elected to participate in the El Al Israel Airlines 2006 Voluntary Severance Program ("Program"), your last day of employment would be February 28, 2007. You were also advised that if an agreement with the IAM was negotiated and ratified by February 28, 2007, which provided more favorable compensation and/or benefits than those provided in the Program, you would receive the more favorable compensation and/or benefits.

No agreement providing for more favorable compensation and/or benefits has been negotiated with the IAM. Nevertheless, the Company has determined to increase the severance formula under the Program for its union-represented staff to two and one-half (2 ½) weeks per completed years of service. The medical benefit previously outlined remains unchanged.

Provided that the release previously forwarded to you is signed on February 28, 2007, and not thereafter revoked, you will be paid severance in the amount of $26,760.08 less lawful deductions, together with such other benefits as provided for in the Program.

Please sign below to confirm your understanding of these terms.

AGREED: - - ʻʻe ccllccnec¡

*Anjali M.M. Malaney*
SIGNATURE

*Feb 28, 2007*
DATE

EL AL ISRAEL AIRLINES LTD.
15 East 26th Street • New York, NY 10010                                      www.elal.com

## Briton, Roger (Long Island)

**From:**   Yossi Benbassat [ybenbassat@elalusa com]
**Sent:**   Wednesday, February 28, 2007 3:19 PM
**To:**   Briton, Roger (Long Island)
**Subject:** FW: :


Sincerely,

Yossi G. Benbassat
Human Resources and Admin Manager
El Al Israel Airlines - North America

**From:** Anjali Malaney (MY)
**Sent:** Wednesday, February 28, 2007 3:14 PM
**To:** Yossi Benbassat
**Cc:** Michael Mayer; John Balzer
**Subject:** :


**From:** Anjali Malaney (MY)
**Sent:** Wednesday, February 28, 2007 3:02 PM
**To:** 'Jay Malaney'
**Subject:**

'
February 28th 2007

Dear Mr. Benbassat

I was misinformed and I am signing the severance letter under duress and protest.

I had asked to withdraw my application within one week that I put it in and the company denied my request.

I was also told if I did not sign it that I could not return to work and would also not receive the dollar amount
On the letter.

Therefore I am signing under protest as my job has not been dissolved.

Sincerely,

Mrs Anjali Malaney

5/29/2007

# EXHIBIT F

**EXHIBIT 2**

**EL AL 2006 VOLUNTARY SEVERANCE PROGRAM**
**SEPARATION AGREEMENT AND GENERAL RELEASE**

El Al Israel Airlines ("Employer") and the employee who has signed his or her name at the end of this document ("Employee"), agree that:

1.    **Election to Participate**.  Upon his or her complete execution and delivery of an Election Form to Employer by November 27, 2006 or such other date established by Employer in its sole discretion, Employee elects to participate in the El Al Israel Airlines 2006 Voluntary Severance Program (the "Program").  Employee's ability to participate in this Program is conditioned upon Employer's acceptance of Employee's offer to participate in the Program, and Employee's satisfaction of all eligibility requirements for the Program, including Employee's complete execution and timely delivery of this Separation Agreement and General Release ("Agreement").

2.    **Last Day of Employment**.  Employee will voluntarily resign from Employer as of December 15, 2006 or such other date established by Employer in its sole discretion ("Resignation Date").

3.    **Eligibility and Consideration**.  The eligibility requirements for the Program are set forth in the El Al Israel Airlines 2006 Voluntary Severance Plan And Summary Plan Description ("Program Plan Document").  Individuals who are eligible for and elect to participate in the Program will be provided with enhanced severance and medical benefits as described in, and subject to the terms of, the Program Plan Document. Employee confirms he or she is eligible to participate in the Program and to receive the consideration specified in the Program Plan Document by entering into this Agreement. Employee understands and agrees that he or she would not receive the monies and/or benefits specified in the Program Plan Document except for his or her execution of this Agreement and fulfillment of the promises contained in this document that pertains to Employee.

4.    **Revocation**.  Employee may revoke this Agreement for a period of 7 days following the day he or she executes this Agreement.  Any revocation within this time period must be submitted, in writing, to El Al's Manager Human Resources and Administration, Yossi Benbassat, and must state, "I hereby revoke my acceptance of my Separation Agreement and General Release."  The revocation must be personally delivered during this period to Yossi Benbassat at El Al, 15 East 26th Street, New York, New York  10010, or mailed to Mr. Benbassat at the above address and postmarked within 7 days of Employee's execution of this Agreement.  This Agreement shall not become effective or enforceable until the revocation period has expired.  If the last day of the revocation period is a Saturday, Sunday or legal holiday recognized by the State of New York, then the revocation period shall not expire until the next following day which is not a Saturday, Sunday or legal holiday.

5.    **General Release of All Claims**.  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates,

6

subsidiaries, divisions, predecessors, successors and assigns, and the current and former employees, officers, directors and agents thereof, and Employer's employee benefit plans, including but not limited to the El Al Pension Plan, the El Al Variable Annuity Plan, the El Al 401(k) Plan, the El Al Medical Plan, any successor plans thereto, and their plan sponsors, plan administrators, benefit officers, administrative committees, investment committees, administrative committee members, investment committee members and fiduciaries (all of the above collectively referred to throughout this Agreement as the "Releasees"), of and from any and all claims, known and unknown, which Employee, his or her heirs, executors, administrators, successors and/or assigns, have or may have against Releasees up to and including the date of the complete execution of this Agreement, including, but not limited to, any alleged violation of: the Railway Labor Act; Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act of 1974; the Immigration Reform and Control Act; the Americans with Disabilities Act of 1990; the Age Discrimination in Employment Act of 1967; the Occupational Safety and Health Act; the Rehabilitation Act of 1973; the Fair Credit Reporting Act; the New York Human Rights Law; the New York City Charter and Administrative Code; the Florida Whistle Blower Law; the Florida Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers Compensation Claim; the Florida Wage Discrimination Law; the Florida Equal Pay Law; the Florida AIDS Act; the Florida Discrimination on the Basis of Sickle Cell Trait Law; Florida OSHA; the Florida Wage Payment Laws; the New Jersey Law Against Discrimination; the New Jersey Family Leave Act; the New Jersey Equal Pay Act; the New Jersey Genetic Privacy Act; the New Jersey wage and wage-hour laws; the California Family Rights Act; the California Pregnancy Disability Leave Act; the California Fair Employment and Housing Act; the California Unruh Civil Rights Act; the California Sexual Orientation Bias Law; the California AIDS Testing and Confidentiality Law; the California Confidentiality of Medical Information Law; the California Smokers' Rights Law; the California Parental Leave Law; the California Apprenticeship Program Bias Law; the California Wage Payment Act; the California Equal Pay Law; the California Whistleblower Protection Law; the California Military Personnel Bias Law; the California Family and Medical Leave; the California Parental Leave for School Visits Law; the California Electronic Monitoring of Employees Law; the California Occupational Safety and Health Act; the California Labor Code; the California Consumer Reports: Discrimination Law; the California Political Activities of Employees Act; the California Domestic Violence Victim Employment Leave Act; the California Voting Leave Law; the California Court Leave Law; the Maryland Human Relations Commission Act; the Maryland Equal Pay Law; the Maryland Parental Leave Law; the Maryland Medical Information Bias Law; the Maryland Wage Payment and Work Hours Law; the Massachusetts Law Against Discrimination; the Massachusetts Equal Rights Act; the Massachusetts Civil Rights Act; the Massachusetts Privacy Statute; the Massachusetts Sexual Harassment Statute; the Massachusetts Consumer Protection Act; the Massachusetts wage and wage and wage-hour laws; the Illinois Human Rights Act; the Illinois Equal Pay Law; the Illinois Genetic Information Privacy Act; the Illinois Religious Freedom Restoration Act; the Illinois wage and wage-hour laws; Michigan Civil Rights Act; Michigan Persons with Disabilities Civil Rights Act; Michigan Whistleblower Protection Act; Michigan Statutory Provision Regarding Retaliation/Discrimination for Filing a Worker's Compensation Claim; Michigan AIDS Testing and Confidentiality Act; Michigan Equal

Pay Law; Michigan State Wage Payment and Work Hour Laws; Michigan Occupational Safety and Health Act; Michigan Handicapped Discrimination Law; Pennsylvania Human Relations Act; Pennsylvania Minimum Wage Act; Pennsylvania Whistleblower Law; Pennsylvania Equal Pay Law; Pennsylvania Wage Payment and Collection Law; any other federal, state, local or other civil rights or human rights, pension, employee benefits, employment or labor law, or any other local, state, federal or other law, rule, regulation, constitution, code, guideline or ordinance; any public policy, contract, tort law or common law; or any statute, common law, agreement or other basis for seeking or recovering any award of costs, fees or other expenses, including attorneys' fees and costs; or any collective bargaining agreement. Nothing in this paragraph is intended to prohibit Employee from enforcing his or her rights under the Program or from enforcing his or her vested rights under the El Al Pension, Variable Annuity and 401(k) Plans.

It is understood and agreed that this is a full and general release covering all unknown, undisclosed and unanticipated losses, wrongs, injuries, debts, claims or damages to Employee which may have arisen, or may arise from any act or omission prior to the date of the complete execution of this Agreement, including, without limitation, any claim arising out of or related, directly or indirectly, to Employee's employment, compensation or termination of employment, as well as those losses, wrongs, injuries, debts, claims or damages now known or disclosed which have arisen, or which may arise as a result of any act or omission as described above. Therefore, Employee hereby waives any and all rights or benefits which he or she may now have, or in the future may have, under the terms of Section 1542 of the California Civil Code, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

6.    **Affirmations.**

a.    Employee affirms that he or she has not filed, caused to be filed, or presently is a party to any claim against Releasees in any forum.

b.    Employee also affirms that aside from the consideration specified in paragraph 3 of this Agreement, he or she: (i) has been paid and/or has received all leaves (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he or she may be entitled; (ii) has been paid for all alleged attorneys' fees and other relief to which he or she may be entitled; (iii) understands that the consideration set forth in paragraph 3 of this Agreement shall not be considered wages for purposes of pension or any other employment related benefits; and, (iv) is not entitled to any monies, relief or recovery whatsoever, except as set forth in paragraph 3 of this Agreement.

c.    Employee affirms that Employee has returned all Employer property, documents and/or any confidential information and further promises, if all such property, documents and/or confidential information have not been returned, to deliver contemporaneous herewith to the Employer all property belonging to the Employer then

8

in the Employee's possession or control. Employee also represents that he or she is in possession of all of the personal property which he or she had at the Employer's premises and that the Employer is not in possession of any of his or her personal property.

       7.    **Applicable Data**. Employee acknowledges that he or she has been provided the job titles and ages of all employees eligible and ineligible for the El Al 2006 Voluntary Severance Program in the form attached hereto as Exhibit "A."

       8.    **Confidentiality**. Employee agrees not to disclose any information regarding the existence or substance of this Agreement and/or the exhibits attached to this Agreement, except to an attorney, tax preparer or immediate family member with whom Employee chooses to consult regarding his or her consideration of this Agreement.

       9.    **Governing Law and Jury Waiver**. This Agreement shall be governed and conformed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions. Employee expressly consents that any action or proceeding relating to the Program will only be brought in a court located in the State of New York and that any such action or proceeding will be heard without a jury or advisory jury. Employee expressly waives the right to bring any such action or proceeding in any other jurisdiction, or to have any such action or proceeding heard before a jury or an advisory jury. If Employee violates this Agreement, Employee consents to the entry of injunctive relief against him or her without the necessity of Employer posting a bond. Employee further acknowledges Employer's right to pursue any and all of its other remedies under the law which may be necessary to remedy any violation of this Agreement.

       10.    **Severability**. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. However, if any portion of the general release language set forth in Paragraph "5" above is declared illegal or unenforceable by any court of competent jurisdiction, Employee agrees that he or she cannot obtain any personal recovery against Releasees.

       11.    **Nonadmission of Wrongdoing**. Employee agrees that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of any liability or unlawful conduct of any kind.

       12.    **Amendment**. This Agreement may not be modified, altered or changed except upon express written consent of both Employee and Employer, wherein specific reference is made to this Agreement.

       13.    **Entire Agreement**. This Agreement sets forth the entire agreement between Employee and Employer, and fully supersedes any prior agreements or understandings between Employee and Releasees pertaining to the subjects addressed in this document. Except as may otherwise be agreed in writing, Employee acknowledges that he or she has not relied on any representations, promises or

agreements of any kind made to him or her in connection with his or her decision to accept this Agreement and election to participate in the Program, except for those set forth in this Agreement, the official plan documents for the Program, the El Al Medical Plan, the El Al Pension Plan, the El Al Variable Annuity Plan, the El Al 401(k) Plan, any successor plans thereto, and any summary plan description or summary of material modifications for the Program or the said Plans.

EMPLOYEE HAS BEEN ADVISED THAT HE OR SHE HAS AT LEAST 45 CALENDAR DAYS TO CONSIDER THIS SEPARATION AGREEMENT AND GENERAL RELEASE, AND HAS BEEN ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTING THIS SEPARATION AGREEMENT AND GENERAL RELEASE. EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS SEPARATION AGREEMENT AND GENERAL RELEASE, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL 45 DAY CONSIDERATION PERIOD.

HAVING ELECTED TO EXECUTE THIS SEPARATION AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES SET FORTH IN THIS DOCUMENT THAT PERTAIN TO EMPLOYEE, AND TO RECEIVE THEREBY THE SUMS AND BENEFITS SET FORTH IN THE EL AL 2006 VOLUNTARY SEVERANCE PLAN, EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS SEPARATION AGREEMENT AND GENERAL RELEASE, INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE OR SHE HAS OR MIGHT HAVE AGAINST RELEASEES.

IN WITNESS WHEREOF, Employee knowingly and voluntarily executed this Separation Agreement and General Release and elected to participate in the El Al 2006 Voluntary Severance Program as of the date Employee signed the Agreement below.

El Al Israel Airlines

Date  2/28/07

Andru Malaney
Print Name of Employee

Anjali Malaney
Signature of Employee

Feb 28, 2007
Date Signed by Employee

707 Brittany Drive
Wayne NJ 07470
Home Address of Employee

073 62 5068
Employee's Social Security Number

10

## EL AL. VOLUNTARY SEVERANCE PROGRAM
## SEPARATION AGREEMENT AND GENERAL RELEASE

### EXHIBIT A

## PERSONS ELIGIBLE FOR THE PROGRAM

| Job Title | Age as 10/25/06 | Job Title | Age as 10/25/06 |
|---|---|---|---|
| Secretary & Executive Secretary | 58, 56, 37, 47, 50, 61, 57, 53, 66 | Groups & Space Cnt Sup & Agent | 52, 47, 33, 33, 39 |
| Sec/Training & Service Quality Co | 44 | Adv & PR Mgr | 48 |
| HR & Admin. Mgr. | 53 | PR Lead Agent | 24 |
| Administrative Manager | 62 | Pax Club Superv, Lead & Clerk | 40, 36, 49, 38, 60 |
| Purchasing | 26 | Gen Mgr For Cargo N & C | 65 |
| Adm Service Clerk | 66 | Cargo Sales Mgr | 59 |
| Insurance & Claim Coor | 63 | Cargo Sales Rep | 57 |
| Sr Sls Dev Coor & Sales Dev Coor | 43, 61, 57 | Cargo Superv | 56 |
| Business Manager | 47 | Airport Cargo Mgr | 54 |
| Customer Rel Coor, Clerk & Pres Cust Clerk | 40, 44, 36 | Res Sales Rep NJ, PA, SF & Baltimore | 52, 56, 51, 52 |
| Asst. Controller | 41 | Traffic Suprv & Coordinator | 36, 49, 50, 38, 48, 45, 30, 61 |
| Rev Acc Suprv & Coor | 54, 56 | Cargo Station Suprv & Dis / Traffic Suprv | 62, 52 |
| Expenses Acc Superv & Coor | 43, 58 | Lost & Found Supervisor | 66 |
| Accountant | 45, 42, 50, 51, 37, 41, 33, 55, 24 | Op / Crew Cnr Coor | 44 |
| Cargo Accountant & Suprv | 59, 29 | Asst Tech Rep. | 43 |
| Res & Ticket Mgr | 52 | Mechanic, Lead Mechanic | 43, 59, 26, 52, 37, 42, 66, 47, 51, 43, 51 |
| Deputy To Res & Tkt Mg | 57 | Maintenance Supervisor | 67 |
| Res Suprv | 47, 62, 45, 40 | Ship / Rec Stores Suprv. | 47 |
| Lead or Sr. Agent, Res, Ticket & Tariff | 59, 58, 53, 45, 48, 47,37, 47, 63, 60, 52 | Station Mgr | 37, 55, 54, 59 |
| Technical Rep | 62 | Traffic Officer, Agent & Lead | 39, 31, 27, 32 |

11

| | | | |
|---|---|---|---|
| Ops / Cargo Coor | 49 | Reg Mgr | 54, 53, 62, 64 |
| Reservation Agent, Ticketing & Tariff Agent | 53, 40, 41, 48, 59, 39, 38, 50, 42, 30, 35, 48, 51, 60, 38, 42, 30, 35, 42, 43, 31, 50, 37, 34, 40, 28, 39, 46, 30, 53, 48, 25, 58, 31, 24, 24, 23, 25, 28, 26, 29, 25, 36, 42 | Sales Suprv, Sr. Sales Rep. & Sales Rep | 51, 60, 39, 60, 50, 58, 59, 53, 65, 56, 61 |
| | | Dist Cargo Rep West Co, Mid West | 54, 48 |

## PERSONS NOT ELIGIBLE FOR THE PROGRAM

| Job Title | Age as 10/25/06 |
|---|---|
| Postee Managers | 60, 37, 55, 58, 64, 64, 44, 60 |