```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
ANJALI MALANEY,                          :
                          Plaintiff,     :
                                         :    07 Civ. 8773 (DLC)
            -v-                          :
                                         :    OPINION AND ORDER
EL AL ISRAEL AIRLINES, YOSSI BENBASSAT,  :
HANNA WOSKOBOINIK, MICHAEL MAYER, JOHN   :
BALZER AND HAIM ROMANO,                  :
                          Defendants.    :
                                         :
-----------------------------------------X
```

Pro se Plaintiff:
Anjali Malaney
707 Brittany Drive
Wayne, New Jersey 07470

For Defendants:
Roger H. Britton
Kathryn J. Russo
Jackson Lewis LLP
58 South Service Road, Suite 410
Melville, New York 11747

DENISE COTE, District Judge:

    Pro se plaintiff Anjali Malaney brings this employment discrimination lawsuit against her former employer, El Al Israel Airlines, and several of its employees under Title VII, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").  Defendants move to dismiss all claims based on Malaney's execution of an allegedly valid release.  Further, defendants move to dismiss the Title VII claims against all individual defendants because they argue that

there is no individual liability under Title VII, and to dismiss the claims under the NYSHRL and NYCHRL against individual defendants Michael Mayer, John Balzer, and Haim Romano because the Complaint fails to allege these defendants' actual participation in the purported discriminatory conduct.  In the alternative, defendants request that their motion to dismiss be converted into a motion for summary judgment, and that summary judgment be granted in their favor.  The motion to dismiss is converted into a motion for summary judgment, and defendants' motion for summary judgment is granted.

BACKGROUND

The following facts are taken from the Complaint.[1]  Malaney, who is Hindu and of Indian descent, began work at El Al Israel

---

[1] Malaney initiated this action by filing a form Complaint for Employment Discrimination along with several supporting documents, including her submissions to the United States Equal Employment Opportunity Commission (EEOC); the EEOC's response to her claim, which found that the information contained in Malaney's complaint did not "establish[] a violation of federal law" on the part of defendants; a copy of the El Al 2006 Voluntary Severance Program Separation Agreement and General Release; correspondence between Malaney and defendant Yossi Benbassat; grievance forms submitted by Malaney; and a letter of recommendation for Malaney, written by defendant John Balzer. Under Federal Rule of Civil Procedure 12(b), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (citation omitted); see Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").  The instant Complaint thus includes Malaney's form complaint and all attached documents, as well as

2

Airlines on April 27, 1992 as a ticket agent. She worked in that position until February 28, 2007, when she resigned. The facts surrounding her resignation give rise to the instant dispute.

In late October 2006, Malaney was told that her job as a ticket agent was being eliminated and that the El Al reservation and ticket office was closing because the work was being transferred to Israel. Yossi Benbassat, El Al's human resources director, presented Malaney with a Voluntary Severance Agreement (the "Agreement"), under which El Al would pay Malaney a lump sum payment in exchange for her resignation. Under the Agreement, El Al employees choosing to participate in the voluntary severance program were required to submit an election form by November 27, 2006. In addition, on their last day of work, participating employees were required to execute a release "forever discharg[ing] Employer" from liability for a variety of legal claims, including those under Title VII, the NYSHRL, and the NYCHRL. The election form and release were provided to the employees simultaneously. The release -- but not the election form -- contained a revocation clause, permitting an employee to

---

her severance program election form, which was "incorporated into [Malaney's complaint] by reference," Int'l Audiotext Network, Inc., 62 F.3d at 72, but was submitted by defendants with their motion to dismiss.

3

"revoke this Agreement for a period of 7 days following the day he or she executes this Agreement."

Malaney submitted a signed election form on November 27, 2006. Presumably referring to the company's plans to close the New York ticketing office, Malaney wrote at the bottom of the election form, "[P]lease keep in mind if the position of the company changes I would like to continue to work for El Al. I consider myself a valued and a loyal employee. . . ." Four days later, on December 1, Malaney emailed Benbassat and informed him that her "decision to take the severance or company buyout proposal is based on the statement you made to the employees in the kitchen two weeks ago that the office is closing on February 28th 2007." She inquired whether the office was in fact closing, and asked for written confirmation that the reservation and ticket office would be "completely dissolved and closed by Feb[.] 28, 2007." Also on December 1, Benbassat sent Malaney a memorandum (the "December 1 Memorandum") confirming her election to participate in the voluntary severance program and informing her that her last day of employment with El Al would be February 28, 2007, on which date she would receive severance in the amount of $21,408.06, should she execute the release that day and not revoke it thereafter, presumably within the seven-day revocation period spelled out in the release.

4

On December 3, Malaney sent a fax to Benbassat, which read: "Please be advised that I am hereby withdrawing my resignation dated Nov[.] 27, 2006." Having received no reply from Benbassat, Malaney again emailed him on December 7, requesting confirmation that he had received her December 3 fax. Later that day, Benbassat emailed Malaney and informed her that she could not withdraw her resignation because the election form had no provision authorizing withdrawal. On December 8, Malaney signed the December 1 Memorandum "to confirm [her] understanding of [its] terms."

Malaney filed a grievance with her union on January 2, 2007, complaining "that the company is downsizing but not closing on Feb[.] 28, 2007." She alleged that other El Al employees who elected to participate in the voluntary severance program were given termination dates in April and June 2007, and some were offered other positions in the company.[2] The grievance did not allege discrimination on the basis of any category protected by Title VII.

On February 28, 2007, Malaney's last day at work, Benbassat sent her two separate communications. First, he sent her a memorandum informing her that her severance package had been recalculated at $26,760.08, less lawful deductions. Malaney

---

[2]   In her pleadings, Malaney does not indicate the outcome of her grievance.

5

signed the memorandum confirming her understanding of its terms, but attached a copy of an email she had sent to Benbassat earlier that day informing him that she had been "misinformed" and was "signing the severance letter under duress and protest." Second, Benbassat sent Malaney a memorandum informing her that, in order to be eligible for severance and medical benefits, she was required to sign a release "without condition or comment," referring to the email she had sent earlier that day. Malaney signed the general release; in her Complaint, she reiterates that she did so "under duress and protest." Malaney claims that Benbassat "threatened . . . that if I did not sign the general release I will not receive the lump sum payment, no unemployment benefits and that I could not return to work. After being a loyal hard working employee, Mr. Benbassat was ready to dismiss me with nothing unless I signed the final papers." Malaney accepted her severance package from El Al and resigned her position. She did not attempt to revoke the release, nor did she attempt to return the severance package. In addition, defendant John Balzer, Malaney's supervisor, provided her with a letter of recommendation for future employment.

Malaney returned to El Al's New York office on March 29 after a job interview with Air India. According to Malaney, when she told defendant Hanna Woskoboinik about her interview, Woskoboinik "said she was going to contact Air India and advise

6

them not to hire" Malaney.  According to Malaney, "Air India never got back to me regarding employment opportunities, because Hanna had more than likely[] contacted the managers she knows at Air India."

Malaney filed a complaint with the EEOC in April 2007, in which she alleged that the voluntary severance program offered to her was "just a ploy" to solicit her resignation and reduce the number of non-Jewish employees at El Al.  Although her complaint to the EEOC was not submitted in the instant action, it is apparent from the EEOC's letter to Malaney (which was submitted) that Malaney made the following additional allegations: (1) that she was "passed up" for positions within the company in favor of Jewish employees; (2) that, contrary to El Al's representation that Malaney's position was being eliminated, someone was hired to replace her upon her resignation, and other employees were being cross-trained to fill ticketing positions in New York City; and (3) that she was discriminatorily denied flight benefits, while similarly situated Jewish employees were afforded those benefits.  El Al denied all Malaney's allegations, and on September 28, 2007, the EEOC issued its response to her complaint, stating that "the Commission is unable to conclude that the information establishes a violation of federal law on the part of Respondent."  The EEOC noted further that its finding of no

7

federal violation "does not certify that the Respondent is in compliance with the statutes."

Plaintiff filed this action on October 11, 2007.  She claims that she was discriminated against on the basis of her race (which she lists as "Asian Indian"), national origin (India), and religion (Hindu), in violation of Title VII, the NYSHRL, and the NYCHRL.  Specifically, she claims she was subjected to discriminatory termination of her employment, unequal terms and conditions of employment, forced resignation, and retaliation.  Malaney named El Al Airlines, Benbassat, Woskoboinik, and Balzer as defendants, in addition to El Al president Haim Romano and Michael Mayer, who, according to defendants, is a former El Al employee who now lives in Israel.[3]

DISCUSSION

I.   Conversion to a Motion for Summary Judgment

Defendants move to dismiss or, in the alternative, for summary judgment on Malaney's Complaint based on her execution of an allegedly valid release discharging El Al and its

---

[3]   Defendants claim that Benbassat accepted service of Malaney's Complaint on behalf of himself, El Al, Woskoboinik, and Balzer.  He declined to accept service on behalf of Mayer or Romano.  Defendants represent that, "[t]o the best of Mr. Benbassat's knowledge, Defendants Mayer and Romano have not been served with the Complaint."  In her opposition papers, Malaney attests that she has served both Mayer and Romano via United States Postal Service.  Because this action must be dismissed in any event, it is unnecessary to resolve whether Mayer and Romano have been served.

employees from liability under Title VII, the NYSHRL, and the NYCHRL. A district court has discretion to convert a motion to dismiss into a motion for summary judgment, see In re G & A Books, Inc., 770 F.2d 288, 294-95 (2d Cir. 1985), but must ordinarily give notice to the parties before such conversion, see Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991). "A party is deemed to have notice that a motion may be converted," however, "if that party should reasonably have recognized the possibility that such a conversion would occur." Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) (citation omitted).

On October 31, 2007, twenty days after Malaney filed her complaint, defendants provided Malaney with notice of their intention to convert their motion to dismiss into one for summary judgment, alerting her that the claims asserted in her complaint "may be dismissed without a trial if you do not respond to this motion by filing your own sworn affidavits or other papers as required by [Federal] Rules [of Civil Procedure] 12(b) and 56(e)." In her responsive pleadings, Malaney submitted, inter alia, a sworn fourteen-paragraph affirmation reciting her version of the facts of the case and a copy of El Al's submission to the EEOC in opposition to her charge.

Thus, plaintiff had adequate notice of the summary judgment motion and submitted extensive evidence with her complaint and in opposition to the motion. Accordingly, she "should

reasonably have recognized the possibility that the motion might be converted to one for summary judgment," and was not "taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading." In re G&A Books, Inc., 770 F.2d at 95. The motion to dismiss will therefore be converted to one for summary judgment pursuant to Federal Rule of Civil Procedure 56.

II. Validity of the Release

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Fed. R. Civ. P. 56(e); accord Sista, 445 F.3d at 169. Only disputes over material facts, facts that might affect the outcome of the suit under the governing law, will properly preclude the entry of summary

judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Defendants observe that the release that Malaney signed on her last day of work, February 28, 2007, specifically discharged El Al and its current and former employees of all liability under, inter alia, Title VII, the NYSHRL, and the NYCHRL, as well as under common law and tort law.  Although the release includes a revocation clause, defendants argue -- and Malaney does not dispute -- that she made no effort to revoke the release.  Indeed, defendants aver -- and, again, Malaney does not dispute -- that she accepted the previously agreed upon package of severance pay and medical benefits and resigned her position with the airline.  Malaney appears to argue that because she attempted to revoke her election to participate in the severance program, her release should be invalidated and she should be permitted to proceed on her employment discrimination claims.

As the Second Circuit has noted, "the validity of a release is a peculiarly fact-sensitive inquiry."  Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437-38 (2d Cir. 1998).  A court must employ a "totality of the circumstances test to determine whether a release of Title VII claims is knowing and voluntary."  Id. at 438 (citation omitted).  Relevant factors to

11

be considered by the court in assessing the totality of the circumstances include:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

Id. "In addition, courts have considered a seventh factor -- whether the employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so." Id.

In the instant case, as defendants persuasively argue, each of these factors, with the exception of the third, militates in favor of finding a valid release. Malaney worked for El Al for sixteen years and, according to the letter of recommendation written on her behalf by Balzer, was "an able employee and an extremely hard worker." She was in possession of the release for at least four months -- from October 27, 2006, when it was distributed to El Al employees, to February 28, 2007, when she executed it. The language of the release is pellucidly clear; indeed, Malaney makes no argument based on the ambiguity of the language. The release advises employees to consult with an attorney, stating in capital letters that employees are "ADVISED

12

IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTING THIS SEPARATION AGREEMENT AND GENERAL RELEASE." Finally, Malaney received severance pay and medical benefits in exchange for executing the release. According to defendants, she would not have otherwise received any severance benefits had she been terminated for any other reason and not pursuant to the voluntary severance program. As to the third factor, defendants concede that Malaney "played no role in deciding the terms of the Release." But as the Second Circuit has recognized, this fact alone does not necessarily create an issue of fact as to voluntariness. See Bormann v. AT&T Communications, Inc., 875 F.2d 399, 403 n.1 (2d Cir. 1989).

Whatever Malaney may have tried to do to revoke her election of participation in the voluntary severance program is irrelevant to her execution of a valid release, and she has offered no evidence indicating that the release was in any way invalid. Indeed, in her opposition to defendants' motion, Malaney did not take issue with any of defendants' evidence concerning the validity of the release or Malaney's execution of it. As the facts relating to each of the factors enumerated above are within Malaney's control and need not be procured through discovery, her failure to request discovery on these issues is not surprising. Because she does not dispute El Al's characterization of her education and business experience, or of

13

the various features of the release and severance program that factored into the analysis performed above, summary judgment must be granted in defendants' favor on all claims arising from conduct predating the release.

Malaney alleges one act of discrimination that post-dates the release, to wit, Hanna Woskoboinik's allegedly retaliatory communication with Air India concerning Malaney's potential employment there. Malaney claims that Woskoboinik "said she was going to contact Air India and advise them <u>not</u> to hire" Malaney. According to Malaney, Air India never contacted her after her interview "because Hanna had more than likely[] contacted the managers she knows at Air India."

In order to establish a prima facie case of retaliation, an employee must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005). Malaney's retaliation claim fails because she has not alleged her participation in any protected activity. None of the complaints Malaney made about her allegedly forced resignation raised the specter of discrimination. Rather, her communications with Benbassat and her January 2 union grievance stated only that she had been misinformed that her position was

being eliminated and that she wished to remain employed at El Al. Such communication, because it does not concern an unlawful employment practice, is not protected activity and cannot give rise to an unlawful retaliation claim. See McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001). Accordingly, summary judgment with respect to Malaney's retaliation claim is granted in defendants' favor. [4]

---

[4] In light of the grant of summary judgment in defendants' favor on all claims, defendants' arguments concerning the viability of Malaney's claims against individual defendants under Title VII, the NYSHRL, and the NYCHRL need not be reached. Nonetheless, it may be noted that as to Title VII, Malaney cannot state a claim against the individual defendants because "an individual defendant cannot be held personally liable under Title VII." Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 608 n.8 (2d Cir. 2006).

As to the state law claims, the Complaint identifies Balzer as Malaney's direct supervisor and states that he provided her with a letter of recommendation on her last day of work. The letter, which Malaney submitted as part of her complaint, says only positive things about her. The Complaint does not identify Mayer or Romano, nor does it make any specific allegations concerning their participation in any alleged discrimination. Accordingly, Malaney has made no allegation that these three individuals participated in the conduct giving rise to the alleged discrimination, and has not stated an NYSHRL claim against them. See Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004).

Although the Second Circuit has never held squarely that the standards for evaluating individual supervisory liability under the NYCHRL are the same as those that apply under the NYSHRL, it has held that, "[t]he same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical." Feingold, 366 F.3d at 158. The claims against Mayer, Balzer, and Romano fail under the NYCHRL for the same reasons that they fail under the NYSHRL.

CONCLUSION

Defendants' October 31, 2007 motion to dismiss is converted into a motion for summary judgment, and the motion for summary judgment is granted.

SO ORDERED:

Dated:   New York, New York
         January 4, 2008

                                         DENISE COTE
                                United States District Judge

Copies sent to:

Anjali Malaney
707 Brittany Drive
Wayne, New Jersey 07470

Roger H. Britton
Kathryn J. Russo
Jackson Lewis LLP
58 South Service Road, Suite 410
Melville, New York 11747